IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| William Joseph Blom,<br><br>                 Petitioner,<br><br>    vs.<br><br>A. J. Padula,<br><br>                 Respondent. | Civil Action No. 6:11-422-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated in Lee Correctional Institution ("LCI") pursuant to an order of commitment from the Horry County Clerk of Court. The Horry County Grand Jury indicted the petitioner in March 2001 for the murder Lance Kevin Neal (App. 971-72). William Diggs, Esq., along with Parnell Diggs, Esq., represented the petitioner on the charge. A jury trial was held October 8-11, 2001, before the Honorable Paula H. Thomas. The jury convicted as charged (App. 692). Judge Thomas sentenced the petitioner to 30 years imprisonment (App. 703). The petitioner appealed. Robert M. Dudek, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, represented the petitioner on appeal. Appellate counsel filed a final brief of appellant in the South Carolina Court of Appeals on May 13, 2004, and raised the following issue:

> Whether the trial judge erred by refusing to give the *State v. Edwards* and *State v. Littlejohn* more comprehensive circumstantial evidence instruction where eyewitness testimony only established appellant and the decedent had a confrontation, and the jury was left to deduce what actually occurred, and whether the shooting was murder, voluntary manslaughter or in self-defense, since the Grippon truncated instruction was insufficient under these circumstances?

(App. 976).

The State submitted its final brief in response on May 11, 2004 (App. 987-99). The South Carolina Court of Appeals issued an unpublished opinion on December 10, 2004, affirming the conviction. *State v. Blom*, Unpublished Opinion No. 2004-UP-622 (S.C. Ct. App. December 10, 2004). The Court of Appeals issued the remittitur on December 29, 2004.

On January 13, 2005, the petitioner filed an application for post-conviction relief ("PCR"), in which he claimed ineffective assistance of appellate counsel and ineffective assistance of trial counsel as follows:

> (1) Ineffective assistance of Appellate counsel for failure to raise meritorious issue with concerns on the Direct Verdict for acquittal when the states evidence raised issues of self defense throughout the trial; Ineffective assistance of Appellate counsel for failure to raise meritorious issues with concerns to the Directed Verdict on Murder when the state is relying on inferred malice throught [sic] trial in a self defense case;

> (2) Trial counsel was ineffective by failing to impeach a material witness of the state while pointing out to the jury inconsistencies; Trial counsel was ineffective by failing to object to the Prosecutorial Misconduct periodicly [sic] Prosecutorial Miscon[duct] in the closing argument (misstatement of fact); Continuously throughout trial appellant was denied a fair and partial trial by the Trial counsels conduct that was so egregious

2

> that counsel did not challeng [sic] veracity of statements in supporting affidavit to determine whether the warrant was issued in reliance on a deliberately or recklessly false affidavit; Appellant claims the deliberately false or demonstrated reckless disregard for the truth from both the State and Counsel prejudiced appellant to effective assistance of counsel; The applicant received ineffective assistance of counsel at trial in that counsel failed to object to an improper malice instruction that shifted the burden of proof to the applicant by creating a rebuttable presumption of malice from the use of a deadly weapon.

(App. 719).

The State made its return to the application on May 2, 2005. The petitioner also filed a notice and motion to amend on January 9, 2006, in which he made the following additional allegations:

> (a)  Conflict of Interest (trial counsel);
> (b)  Violation of Confrontation Clause (trial counsel failed to object to hearsay);
> (c)  Prosecutor Misconduct (closing argument);
> (d)  Counsel's failure to make reasonable investigation;
> (e)  Due Process Violation, Equal Protection Violation (police acted in bad faith by not reasonably preserving potentially useful evidence).

(App. 707-14).

An evidentiary hearing was held February 26, 2007, before the Honorable Steven H. John. Candice A. Lively represented the petitioner in the action. At the close of his case, the petitioner withdrew his claims of ineffective assistance of appellate counsel. (App. 809). At the conclusion of the hearing, the PCR judge denied relief in a detailed

ruling from the bench [1] (App. 885-89). The judge issued a written Order of Dismissal on June 13, 2007 (App. 891-920). The petitioner submitted a *pro se* petition for rehearing on or about August 6, 2007 (App. 921). The State made its return to the petition on August 14, 2007 (App. 948-50). Judge John found the petition was not properly filed as the petitioner was represented by counsel and that the petition was not timely filed; however, Judge John also considered the document and found no cause to alter the ruling (App. 954). The petitioner appealed.

M. Celia Robinson, Appellate Defender of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. Appellate counsel filed a petition for writ of certiorari in the Supreme Court of South Carolina on August 15, 2008, and raised the following issues:

> 1. Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel by failing to examine the telephone records custodian and in failing to sufficiently review or understand the telephone records so that he was unable to effectively use the records to support the defense theory and to rehabilitate the credibility of the defense witness?
>
> 2. Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance in advising the petitioner not to testify despite the fact that his testimony was crucial to establish the
>
> 3. Did the PCR judge err in denying relief despite trial counsel's ineffectively failing to timely object or to move for a mistrial in response to the State's closing argument commenting on the petitioner's failure to testify at trial?

---

[1] Before beginning his Order, the PCR judge noted, "[T]his particular matter... was before the court some weeks ago. It was continued to this day to allow the testimony of Mr. Diggs and allow both sides to be more prepared for this hearing. In the interim the court has had more than ample opportunity to read all of the transcript of record and all of the matters filed by the parties and the entirety of the clerk of court's file" (App. 885).

(Cert. pet. at 2).

The State filed its return to the petition on June 3, 2009. The Supreme Court of South Carolina denied the petition on May 27, 2010, and issued the remittitur on June 15, 2010.

In his federal petition for writ of habeas corpus now before this court, the petitioner alleges error and sets out the following grounds for relief:

> Ground One: Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel by failing to examine the telephone records custodian and in failing to sufficiently review or understand the telephone records so that he was unable to effectively use the records to support the defense theory and to rehabilitate the credibility of the defense witness?
>
> Ground Two: Did the PCR judge err in denying relief despite trial counsel's effectively failing to timely object or to move for a mistrial in response to the state's closing argument commenting on petitioner's failure to testify at trial?
>
> Ground Three: Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance in advising petitioner not to testify despite the fact that his testimony was crucial to establish the claim of self-defense?

(Pet. at 6-9).

## **UNDERLYING CASE FACTS**

According to multiple eyewitnesses, the victim and the petitioner were fighting in the parking lot of a restaurant when the petitioner shot victim. The following recitation of facts is taken from appellant's brief in the direct appeal, and is, consequently, a recitation of facts in the light most favorable to the petitioner:

> Eighteen year old Mary Kaliebe was playing pool with fourteen year old K**** R***** and Lance, the decedent, at Barflys on the

5

afternoon of September 22, 2000, in North Myrtle Beach. R. 33, II. 11-24. Kaliebe claimed she could not recall whether the decedent was drinking that day. However, it would later be revealed that he had a blood alcohol content of .11 at the time of his confrontation with appellant. R. 33, 11. 23-24; R.245,11. 10-17.

Hope, the bartender at Barflys, told the decedent he had a phone call. R. 34,11.8-16. The decedent took the call, and then returned to talk to Kaliebe and K****. He told them that he was leaving to fight appellant over his former girlfriend, Bronna. R. 35, II. 6-25.

The decedent informed Kaliebe he was going to meet appellant "behind Hoskins [a restaurant] for [a] man-on-man fight." R. 50, II. 7-11. Kaliebe said she told the decedent "No, don't do that because he's got a gun." R. 50, 11. 17-21.

Kaliebe watched the confrontation between the two men from the upstairs deck at Barflys. R. 37, II. 3-19. She saw appellant pull into the parking lot of Hoskins, and she observed the men talking. "[T]hen they got in the car." R. 37, 1. 16 - 38, 1. 1.

Kaliebe testified the men got out of the car at some point, and "they were in front of the car and then they were just standing there ... shots [were fired] and Lance was running..." "[B]efore the shots, I saw Lance taking off his shirt and he was running towards the News —" R. 38, I. 20 39, I. 12.

Sixteen year old K**** R***** also testified that the decedent received a phone call at Barflys. R. 55, I. 13 - 57, I. 17. R***** remembered the decedent told her he was leaving to fight appellant. R. 58,11.9-13. R***** recalled, "He got the phone call and he said that he would be right back, he was going to whip somebody's ass." R. 66, 11. 14-20.

It was undisputed that appellant's necklace was found broken at the scene of the confrontation with the decedent in the parking lot. R. 170, I. 2 - 172, 1. 17. This was consistent with appellant's necklace having "been jerked off." R. 172,11.24-25; Supp. R. 5,11. 16-25.

Appellant's gun was recovered in the bushes a short distance away. Appellant later volunteered to show the police where the gun was hidden. However, the police had already recovered the gun. Supp. R. 7,1. 21 - 9, 1. 6.

As stated, eyewitness accounts of exactly what happened during the confrontation between appellant and the decedent were sketchy. Helen Gause was a waitress at Hoskins's Restaurant where the confrontation occurred in the parking lot. R. 266, 1. 17 - 267, 1. 7. Gause remembered the restaurant was closed between 3:00 p.m. and 5:00 p.m. to prepare for the dinner rush. Gause recalled:

> I had just probably locked the door and had started back to the back of the restaurant when I heard something hit the door, and I turned around, and when I did I saw this gentleman falling back into the street, and I went to the door to unlock it, but one of the other waitresses had also gotten to the door the same time I did, and she unlocked it and went out to where the gentleman was laying in the street, and she said, "Oh, my God, he's been shot," and I immediately turned and went to the phone and called 911.

R. 267, 11. 16-25.

Lana Martin was also a waitress at Hoskins Restaurant. She knew appellant and the decedent. R. 391, 1. 20 -392,1. 24.

Martin remembered that the decedent "was yelling at Bill [appellant] from that distance [in the Hoskins parking lot]." R. 393, II. 12-24. Martin recalled, "When they came face to face, I stood between then and told Billy, 'Get in your car and go home, Billy,' and, 'Lance, you're drunk. Go home. Go home. This isn't the place.'" R. 396, II. 1-4.

Despite Martin's efforts, the decedent refused to get in his car. Martin testified, "In the parking lot, Lance was bulling Billy, was shoving him, you know, 'Come on. Come on. I'm, you know, sick of this. I'm going to kick your ass. I'm going to fuck you up.' That was the line he used over and over and over, and Billy just wanted to get away from him... I thought Billy would escape, I thought he could get away from him." R. 396, 1. 19 - 397, 1.15.

Martin testified the decedent "would get drunk and like[d] to fight." R. Christopher Vaught and Hope Hickman also testified the decedent liked to fight. R. 418, ll. 18-21; R. 424, II. 2-21. Hope Hickman remembered, "1 asked him to leave the bar on a number of occasions for fighting." R. 424, II. 2-7.

Appellant was living with Leslie Santiago at the time. Santiago testified when appellant returned home that day, he was upset

7

> and "his shirt was ripped." Santiago also noticed bruises and scratching on appellant. R. 436, 1. 6 - 437, 1. 11. Santiago also testified that appellant's chain was missing. R. 437, II. 12-13.

(App. 978-81).

The State's version of the facts, as presented in the final brief of respondent in the direct appeal, is as follows:

> On September 22, 2000, Lance Neal was shooting pool at a N. Myrtle Beach bar with two friends, Mary Kaliebe and K**** R******. Neal received a call at the bar from William Blom. Neal informed Kaliebe that he and Blom were going to have a "man on man fight" over a woman. Kaliebe discouraged Neal from fighting because she used to date Blom and knew he carried a gun. Neal then left to meet Blom outside a nearby restaurant. Kaliebe and R****** were able to watch events unfold from an upstairs outdoor patio in the bar. Kaliebe saw Neal and Blom meet, talk briefly and get in Blom's car. R. 32-37, Tr. p. 72-77. Outside the restaurant, Vickie Knight, and employee of the restaurant, and her daughter were parked in a van. As Ms. Knight counted money to deposit in the bank she noticed Neal and Blom sitting in the car. She saw the men exit the car and "tussle a little bit," but never saw the men fight. As Ms. Knight returned to counting her money, she heard shots. She then saw Neal running away and Blom drive away. R. 6-11, Tr. p. 44-49. It appeared to Kaliebe that the men were not fighting in the car. She then saw the men exit the car and stand and talk. Both men were using hand gestures in a non-aggressive manner. FN. She then saw Neal begin to run as 4-5 shots rang out. Blom pivoted as if he was going to follow Neal, then got in his car and drove away. R. 38-40, Tr. p. 78-80. R****** testified similarly. R. 58-61, Tr. p. 98-101. Kaliebe and R****** ran to Neal, who was lying in a puddle of blood. R. 41-42, 62, Tr. p. 81-82; 102. Neal had been shot in the chest and the knee from a distance of greater than 24 inches. R.237-240,Tr. p. 306-309.
>
> FN. Appellant presented testimony that the victim was yelling at him and threatening to beat him up. R. 393-97,Tr. p. 489-493.

(App. 992).

## **APPLICABLE LAW AND ANALYSIS**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

8

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v.*

9

> *Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

As set forth below, this court finds that each of the petitioner's grounds for relief fails on the merits.

***Ground One***

In his first ground for relief, the petitioner alleges his trial counsel was ineffective in "failing to examine the telephone records custodian and in failing to sufficiently review or understand the telephone records so that he was unable to effectively use the records to support the defense theory and to rehabilitate the credibility of the defense witness" (pet. at 6). The petitioner claims that the telephone records showed that the telephone calls he received after 6:00 p.m. on the night of the incident reverted to voice mail, that his counsel's investigation could have yielded this information, and that counsel could have used this information in his cross examination of the records' custodian to show defense witness Leslie Santiago, the petitioner's girlfriend, was truthful when she testified that after the incident the petitioner just wanted to sleep (*see* App. 539-40).

On direct examination, Santiago testified that the petitioner was scratched, upset, and disheveled after the incident, and his necklace was missing. He only wanted to sleep, which they did (App. 534-39). She testified that he did not go anywhere after returning home at approximately 4:30 p.m. (App. 539, 553). The murder occurred at approximately 3:30 or 4:00 p.m. (App. 42, 387). Upon cross-examination, the prosecutor asked Santiago if "it's unlikely that [the petitioner] would be making telephone calls on that cell phone [when] asleep," to which Santiago relied, "Right" (App. 549). In his closing argument to the jury, the prosecutor cited the telephone records in questioning Santiago's credibility: ""[I]f you look at the phone calls . . . it's for a period of duration which would

indicate that the phone was answered which would indicate that they were not asleep, which would indicate she is not telling you the truth" (App. 654).

At the PCR hearing, defense counsel testified that the records were advantageous in that they showed the victim had tried to contact the petitioner the day of the incident, and the victim "was the one who initiated this confrontation and not" the petitioner (App. 828-29). He acknowledged the petitioner's PCR testimony that some calls went to voice mail, but testified he "didn't see how it had a good fit into the case, you know, and that's why I made a decision not to ask her [the telephone records' custodian] any questions" (App. 845). Counsel reasoned "we had a lot better evidence to prove that point than trying to argue a speculative interpretation of the phone records that just didn't seem to be a good way to go about establishing that point" (App. 846). Counsel testified that his strategy centered on the actual shooting and establishing that the petitioner had been pushed against a wall, gave one warning shot, then shot victim in the knee and lastly in the chest. The petitioner's broken necklace at the scene and victim's threats to harm the petitioner supported the defense theory (App. 817, 824-25, 851, 870, 876).

The PCR judge found counsel was reasonable in pursuing a self-defense case (App.. 887). Further, the judge found as follows:

> The Court finds the telephone records were peripheral to the critical issues for trial and that counsel's treatment of the telephone records constituted a reasonable trial strategy. This Court also finds that the Applicant failed to show the requisite prejudice. The Applicant failed to establish there is a reasonable probability the result of the trial would have been different had counsel engaged in additional investigation and cross-examination of the records' custodian, or had counsel objected to the admission of the records. . . .

(App. 897).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must

11

show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

The PCR judge identified and utilized the *Strickland* test and reasonably found that counsel did not render deficient representation. As pointed out by trial counsel, the critical time in the records was the time preceding the murder, not after. As defense counsel testified, the phone records actually helped in that they showed the victim initiated contact with the petitioner. Whether the petitioner actually received calls after the murder was of marginal relevance. The girlfriend's testimony was impeached, but her testimony simply established the petitioner had scratches and was missing his necklace, and it was not disputed that the necklace was found at the murder scene (*see* App. 657 (solicitor acknowledges in closing that broken necklace found)). As argued by the respondent, Santiago's testimony had little practical impact on self-defense.

Based upon the foregoing, the PCR court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, this ground for relief fails.

***Ground Two***

The petitioner alleges in Ground Two that his trial counsel was ineffective in "failing to timely object or to move for mistrial in response to the state's closing argument commenting on petitioner's failure to testify at trial" (pet. at 7). In his closing argument, the prosecutor argued:

> It's very clear that he had an avenue of escape. He didn't testify and he doesn't have to, but you can see from his person how big he is and whether or not he could have gone around the back of the cars or even behind the palm trees even and gotten away, as their own witnesses or witness indicated.

(App. 656-57).

At the close of arguments and before the charge, defense counsel argued that the prosecutor "made reference in his closing to our client not testifying" and asked for an instruction with "more emphasis" on the fact that the petitioner did not have to take the stand (App. 662-63). The trial judge agreed to charge "clearly" and "with emphasis" (App. 663). The judge charged:

> Let me state to you that the Solicitor in this case had said something in reference to the Defendant's size and he mentioned that he had not taken the witness stand. I will be instructing you more fully on this point, but the Defendant has a right and I'll tell you more about that. The fact that he did not take the witness stand cannot and will not be used against him in this case. I wanted to make that clear to you and I will instruct you more fully in that regard.

(App. 664).

The judge further charged:

> I instruct you and emphasize that the fact that a Defendant did not testify is not a factor to be considered by you in any way in your deliberation and in your consideration of the guilt or the innocence of the Defendant. It must not be considered by you in any manner whatsoever. A Defendant has the constitutional right to remain silent and the assertion of this right must not be considered by you in your deliberations. I repeat, under your oath you are to draw no conclusions whatsoever from the fact that the Defendant in this case did not testify. The fact that this Defendant did not testify should not even be discussed in the

> jury room. The burden of proof, as I have stated to you, is on the State. The Defendant is not required to prove his innocence. The burden of proof remains on the State to prove guilt beyond a reasonable doubt.

(App. 670-71).

At the PCR hearing, defense counsel testified:

> Well as we were sitting there we heard him say that and then Parnelli and I discussed it, Parnell is my son and he was there with me during the trial and I explained to him what I would, what I wanted him to do with respect to that reference and he did that and we didn't, I make a lot of motions for mistrial, I didn't make one in that case because I didn't want to, I didn't want to lose what I felt like was a good possibility to win the case.

(App. 834). He also confirmed that solicitor's comment was made only once and that the trial judge gave a "curative" instruction (App. 834). Counsel further testified that he did not find the comment particularly damaging and the instruction was a reasonable way to handle the comment (App. 854-55).

The PCR judge found:

> [T]he Applicant failed to make the requisite showing of prejudice from counsel's failure to immediately object or move for a mistrial; therefore it is unnecessary to determine whether the comment was an improper reference to Applicant's right to remain silent or was merely a statement of the law or reference to the Applicant's size. This Court finds the solicitor made a single reference which was not repeated or alluded to at any point during the trial. The trial court provided a curative instruction immediately upon the conclusion of the prosecutor's argument which was repeated to the jury during the judge's charge on the law. The instructions effectively cured any impropriety. This Court finds the Applicant failed to show the outcome of the trial would have been different if an immediate objection and motion for mistrial had been made. Moreover, this Court also notes that trial counsel and the Applicant felt it was very likely the case would result in an acquittal at that point in the trial. Counsel's advice to request a curative instruction rather than move for a mistrial based on the belief the jury was favorable to the Applicant, is permissible trial strategy. *Green v. State*, 351 S.C. 184, 569 S.E.2d 318 (2002).

(App. 911-12).

This court agrees with the respondent that the PCR judge reasonably applied *Strickland* based upon facts fully and fairly supported by the record. The petitioner's trial counsel reasonably and strategically considered what, if any, action was necessary following the comment. When read in the transcript, the comment acknowledges the right the accused to not testify and notes the petitioner's size.

> In considering whether a prosecutor's words constitute a comment on the defendant's failure to testify, this court asks, "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" *United States v. Francis*, 82 F.3d 77, 78 (4th Cir.1996) (quoting *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir.1973)). To answer these questions, the court evaluates the comment "in the context in which it was made." *United States v. Percy*, 765 F.2d 1199, 1204 (4th Cir.1985).

*United States v. Jones*, 471 F.3d 535, 543 (4th Cir. 2006). Here, the prosecutor's comment was in reference to the jury being able to see the petitioner's size, which related to the avenue of escape argument. Merely noting physical characteristics is not a comment on the right. *See State v. Hart*, 412 S.E.2d 380, 381 (S.C. 1991) ("It is well-settled that the State's exhibition of a defendant's physical characteristics does not implicate the defendant's privilege against self-incrimination because such an exhibition is not testimonial." (citing *Schmerber v. California*, 384 U.S. 757 (1966))). Furthermore, even assuming the comment was improper, the comment was brief, and the trial court's instruction to the jury that it could not consider the petitioner's failure to testify in any way and could not use it against him was sufficient to cure any potential error. "[I]mproper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant." *Johnson v. State*, 480 S.E.2d 733, 735 (S.C. 1997).

Based upon the foregoing, the PCR court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Further, the

decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

***Ground Three***

The petitioner next argues that his trial counsel was ineffective "in advising petitioner not to testify despite the fact that his testimony was crucial to establish the claim of self-defense" (pet. at 9). After the motion for direct verdict was denied (App. 448-49), the trial record shows that the court advised the petitioner of his right to testify and that if he chose not to testify the jury would be instructed that they could not consider same in their deliberations. He was also advised the choice was his to make (App. 451-53). After conferring with counsel, he initially informed the judge he would testify (App. 453). After the defense case was presented and after an overnight break in the proceedings, the petitioner informed the trial judge, through counsel, that he had changed his mind and would not testify (App. 613). The trial judge once again advised him of his rights regarding testifying (App. 615-17). The petitioner indicated on the record his choice was not to testify in his criminal trial, specifically stating, "I am satisfied with my defense and I would like to rest" (App. 617).

The petitioner conceded at the PCR hearing that he understood his right to testify and understood it was his choice to testify or not testify in his criminal trial (App. 803). He testified, however, that he followed his counsel's advice and opinion that the State had not "proven their burden" (App. 803). Defense counsel confirmed that he advised the petitioner of his opinion, but also confirmed that the decision was the petitioner's to make (App. 825-27). He further agreed on cross-examination that he spent "a substantial amount of time with [the petitioner] regarding his testifying" (App. 847). He noted that the petitioner could add very little to a defense that was already presented through "physical evidence" and taking the stand would subject him to "character attack in terms of his credibility or

16

raising the issue establishing some reason that the jury might choose not to like him" (App. 849).

> The PCR judge found:
>
> This Court finds that counsel's advice to Applicant respecting whether he should testify at trial was based upon the facts of the case, counsel's investigation, counsel's experience in the trial of such matters, the evidence presented at trial and the strategy developed by counsel and the Applicant for trial. This Court finds that counsel fully advised the Applicant of the law and his rights respecting testimony as well as counsel's assessment of the potential benefit and harm, and that the Applicant understood the discussions. This Court finds the trial court also explained the law and the Applicant's rights respecting testifying at trial and the Applicant understood the explanations and inquiries. This Court finds the Applicant thereafter knowingly and voluntarily waived his right to testify as a matter of the Applicant's trial strategy. This Court finds that the Applicant was not improperly influenced by his attorney but made a knowing and voluntary decision pursuant to the reasonable strategy developed for trial. This Court notes that when the Applicant waived his right to testify at trial, he informed the trial court that he was satisfied with his defense.
>
> This Court finds that Counsel's advice to Applicant was within the expected professional norms and was neither deficient nor prejudicial.

(App. 904-905).

The record before this court fully supports the PCR judge's finding that trial counsel's advice to the petitioner was neither deficient nor prejudicial. Based upon the foregoing, the PCR court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 24) be granted.

                                                  s/ Kevin F. McDonald
                                                  United States Magistrate Judge

January 25, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).